IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

TAMMIE COCHRAN                                                                                          PLAINTIFF

      V.                Civil No. 2:22-cv-02008-PKH-MEF

KILOLO KIJAKAZI, Acting Commissioner,
Social Security Administration                                                                          DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Tammie Cochran, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (the "Commissioner") denying her claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.    Procedural Background**

Plaintiff protectively filed her application for DIB on May 3, 2019, alleging disability since January 3, 2019, due to Kienbock's disease (interrupted blood supply to the lunate of the wrist, leading to death of the bone) and carpal tunnel syndrome in the left wrist with chronic pain and loss of motion; severe migraines; lower back pain; foot pain; and rheumatoid arthritis. (ECF No. 9-4, pp. 3, 15; ECF No. 9-6, pp. 2-3; ECF No. 9-7, pp. 3, 20, 45-46). The Commissioner denied Plaintiff's applications initially and on reconsideration, and an administrative hearing was held on December 16, 2020. (ECF No. 9-3, pp. 2-48). Plaintiff was present and represented by counsel.

On her alleged onset date, Plaintiff was 47 years old and possessed a high school education. (ECF No. 9-4, p. 15). Although she had past relevant work ("PRW") experience as a box maker,

cashier, secretary, and clerk/stocker/cashier, she performed no substantial gainful activity after her alleged onset date. (ECF No. 9-7, pp. 4-5,12-19, 86).

On March 10, 2021, Administrative Law Judge ("ALJ"), Glenn Neel, issued a partially favorable decision in which he found the Plaintiff's osteoarthritis of the left wrist, status post multiple surgeries; mild degenerative disk disease ("DDD") of the lumbar spine; and left carpal tunnel syndrome ("CTS"), status post release surgery to be severe. (ECF No. 9-2, p. 42). He concluded Plaintiff was disabled between January 3, 2019, and June 4, 2020, due to severe wrist impairment that would result in absenteeism of at least two days of work per month. (*Id*. at 44-48). However, beginning June 5, 2020, the ALJ noted medical improvement, concluding that she maintained the RFC to perform light work with occasional climbing of ladders/stairs, stooping, kneeling, crouching, crawling, and handling/fingering with her left upper extremity, and no concentrated exposure to workplace hazards, including the operation of a motor vehicle. (*Id*. at 49-52). Although this RFC prevented her from performing her past relevant work ("PRW"), with the assistance of a vocational expert ("VE"), the ALJ determined Plaintiff could perform work as a furniture rental clerk, laminating machine off bearer, protective clothing issuer, school bus monitor, head hostess, and chaperone.

On December 21, 2021, the Appeals Council denied Plaintiff's request for review (ECF No. 9-2, pp. 2-8), and Plaintiff subsequently filed her Complaint to initiate this action (ECF No. 3). Both parties have filed appeal briefs (ECF Nos. 14, 15), and the matter is ripe for resolution. The case has been referred to the undersigned for Report and Recommendation.

## II.     Applicable Law

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial

evidence is less than a preponderance, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014). If there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id*.

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past

relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. § 404.1520(a)(4). The fact finder only considers Plaintiff's age, education, and work experience in the light of her residual functional capacity if the final stage of the analysis is reached. 20 C.F.R. § 404.1520(a)(4)(v).

### III.   Discussion

In a single issue on appeal, the Plaintiff insists that the ALJ improperly concluded that she had experienced medical improvement as of June 5, 2020. As previously mentioned, the ALJ entered a partially favorable decision, finding the Plaintiff disabled from January 3, 2019, through June 4, 2020. Following a thorough review of the record, we agree that the record does not support a finding of medical improvement as of June 5, 2020.

Once the ALJ has found that a claimant was disabled for a period but has improved, he must apply the medical improvement standard to determine whether their disability has ceased. *Koch v. Kijakazi*, 4 F.4th 656, 663 (8th Cir. 2021) (citing *Delph v. Astrue*, 538 F.3d 940, 945-46 (8th Cir. 2008), *cert. denied*, 556 U.S. 1189, 129 S.Ct. 1999 (2009)). The "medical improvement" standard requires the Commissioner to compare a claimant's current condition with the condition existing at the time the claimant was found disabled and awarded benefits. *Delph*, 538 F.3d at 945-46. If there has been medical improvement related to the claimant's ability to work, and the claimant is able to engage in substantial gainful activity, then a finding of not disabled will be appropriate. *Nelson v. Sullivan*, 946 F.2d 1314, 1315 (8th Cir. 1991). Medical improvement is said to be related to the claimant's ability to work if an impairment improved to the extent that it no longer meets a listing. *See* 20 C.F.R. § 404.1594(c)(3)(i) ("If medical improvement has occurred and the severity of the prior impairment(s) no longer meets or equals the same listing

section used to make our most recent favorable decision, we will find that the medical improvement was related to your ability to work.").

Records indicate that the Plaintiff suffered a Workers' Compensation injury to her left wrist in the early 2000s. In May 2006, an MRI of her left wrist revealed findings consistent with Kienbock's disease/lunate avascular necrosis, subchondral fractures, localized areas of synovitis in the radiocarpal space and distal radial ulnar joint, granulated tissue intrinsic to the lunate, and some perfusion of the lunate near cystic changes on the dorsal and ulnar aspects of the lunate bone. (ECF No. 9-11, pp. 53-54). Two months later, she underwent surgical shortening with capitohamate arthrodesis, distal bone graft, and revascularization and bone grafting of the left lunate using the second dorsal intermetacarpal artery. (ECF No. 9-12, pp. 26-27). Due to continued discomfort in late September 2006, Dr. Michael Moore surgically removed the hardware and placed a left capitate bone graft with screws. (*Id*. at 28-29). Unfortunately, Plaintiff's symptoms persisted, resulting in the need for a third procedure in May 2008 to remove hardware and perform an interposition arthroplasty with the insertion of a Graftjacket, a human collagen template. (*Id*. at 30-31).

In March 2018, Plaintiff's wrist pain returned, prompting her to confer with orthopedist, Dr. Brian Norton. (ECF No. 9-10, pp. 92-93, 108, 119). An exam revealed pain in the center aspect of the wrist over the head of the capitate, as well as pain with extension and flexion. X-rays revealed some further collapse of the metacarpal joint. An MRI had confirmed the presence of changes within the capitate but no obvious recurrence of her avascular necrosis. Dr. Norton encouraged her to exercise. (ECF No. 9-8, p. 12; ECF No. 9-10, pp. 85-87, 90, 103-104, 114, 116, 126, 146, 152).

Plaintiff's pain did not respond positively to the exercise, prompting her return two months later with complaints of significant left wrist pain. (ECF No. 9-8, p. 12; ECF No. 9-10, pp. 100, 122). After assessing her with posttraumatic arthritis about the mid carpal joint status post interpositional arthroplasty between the capitate and lunate, Dr. Norton recommended partial wrist fusion. In the following months, as they awaited approval from Workers' Compensation, he further explained that conservative treatment would not be beneficial, as her pain increased with use, and that both her impairment and pain would continue to deteriorate if surgery was not performed. (ECF No. 9-8, p. 12; ECF No. 9-10, pp. 79-80, 88, 97, 118, 124). Unfortunately, her procedure was not approved until January 2019, at which time Dr. Norton perform a left scaphoid excision with partial wrist fusion and left posterior interosseous neurectomy. (ECF No. 9-8, pp. 6-101; ECF No. 9-9, pp. 1-84; ECF No. 9-10, pp. 54-56, 94-96, 130-132, 134-141, 143-145, 148). Thereafter, Dr. Norton restricted her to no use of her left hand.

During a follow-up appointment on January 21, 2019, Plaintiff reported wrist pain as well as tingling in her fingertips. (ECF No. 9-10, pp. 81-82, 89, 99, 120-121). Treatment notes from Dr. Norton's clinic indicate that she was placed in a short arm cast, to be worn full-time; prescribed Ultram; and instructed to continue not using her left hand.

Between February 19 and May 1, 2019, Plaintiff participated in occupational therapy. (ECF No. 9-10, pp. 66-67). Overall, she had good rehabilitation potential and tolerated the progression of therapy well. (*Id*. at 6-53, 156).

On April 4, 2019, Dr. Norton noted a decreased range of motion in her wrist and opined that a five-pound weight restriction would remain in effect. (ECF No. 9-10, pp. 64-65). The following month, however, she continued to experience some occasional wrist pain, a decreased range of motion in the wrist (20 degrees of extension, 40 degrees of flexion, and 10 degrees of

radial and ulnar deviation), and some numbness and tingling in her left hand. (*Id*. at 60-62). An exam also revealed positive Tinel's (a sensation of pins and needles when the nerve is tapped) over the carpal tunnel, Phalen's (indicating CTS), and Durkan's (indicative of numbness, pain, or paresthesia in the distribution of the median nerve) signs. X-rays showed fusion between the capitate and lunate, as well as the triquetrum and hamate with hardware in the appropriate position. Dr. Norton noted that these findings were consistent with CTS and ordered an EMG/nerve conduction study to confirm this diagnosis. He also opined that she could not return to work without restrictions, so he recommended getting a functional capacity evaluation ("FCE"). The EMG/nerve conduction study ultimately confirmed the presence of moderate CTS in the left wrist. (*Id*. at 70-78, 162-165).

Over the next few months, her symptoms persisted, and she developed some crepitus in the wrist with flexion and extension. (ECF No. 9-10, pp. 58-60). Dr. Norton administered a steroid injection that provided only mild relief of her symptoms. (*Id*. at 57-58, 68-69). Believing her symptoms could be due to the remaining hardware, on August 19, 2019, he surgically removed the hardware from her left wrist and performed a left CT release. He was unable to perform a wrist fusion due to a nonunion and the absence of a femoral head allograft. (ECF No. 9-11, pp. 127-129). And in September, Dr. Norton prescribed a bone stimulator. (ECF No. 9-10, pp. 217-219).

Unfortunately, post-surgical follow-up exams documented persistent pain and range of motion deficits. (ECF No. 9-10, pp. 216-217). Between October 8 and November 6, 2019, she again participated in therapy. (ECF No. 9-11, pp. 12-27). In December, Dr. Norton indicated that a recent CT scan had confirmed what he believed to be fusion between the capitate and lunate and opined that her pain was likely due to posttraumatic arthritis in the wrist. He recommended trying

to fuse the wrist again and placed her on a 15-pound work restriction. (ECF No. 9-11, pp. 5-6, 28).

On February 3, 2020, Plaintiff underwent hardware removal of the left wrist with fusion of the femoral head allograft and demineralized bone matrix for a diagnosis of avascular necrosis of the left lunate with posttraumatic arthritis. (ECF No. 9-11, pp. 39-40). Thereafter, Dr. Norton placed her in a removable splint and advised her to continue bone stimulation. (*Id*. at 37-39).

On June 5, 2020, the Plaintiff reported doing well with no wrist pain. (ECF No. 9-11, pp. 162-164). Her incision looked good with no sign of infection, and the range of motion in her fingers was improving. X-rays showed good alignment with the hardware in the appropriate position. Range of motion deficits and pain in the wrist returned, however, prompting Dr. Norton to order an FCE. (*Id*. at 209-211).

On October 14, 2020, noting the validity of the FCE, Dr. Norton released her to perform light work and assessed her with a wrist impairment rating of 30 percent, corresponding with an 18 percent impairment rating to the body as a whole. (ECF No. 9-11, p. 212).[1]

On April 15, 2021, Plaintiff reported some increased pain in the wrist. (ECF No. 9-2, pp. 18-21). This pain was mainly with lifting and gripping activities. Although her finger motion had improved, there was no wrist motion and mild tenderness directly over the wrist. X-rays confirmed no complete fusion in the wrist. On May 3, 2021, a CT scan verified no firm bony union between the lunate and capitate and between the capitate and long finger metacarpal base.

---

[1] Although this concludes the medical evidence presented to the ALJ, Plaintiff provided additional medical records to the Appeals Council. Because these records were dated between April and June 2021, the Appeals Council concluded that they did not relate to the period at issue, namely January 3, 2019, through March 10, 2021. However, the records are included in the record before this Court and must be considered in our "substantial evidence" analysis of the Commissioner's decision. *Gartman v. Apfel*, 220 F.3d 918 (8th Cir. 2000) (holding that records submitted to and considered by the Appeals Council in their denial of review must be considered in the district court's decision).

Five days later, Dr. Norton wrote a letter indicating that the Plaintiff suffered from avascular necrosis of the lunate in the left wrist that had required numerous procedures, the most recent of which was a total wrist fusion. (ECF No. 9-2, p. 20). Due to the amount of bone loss, he had to use a large bone graft and recent objective testing showed a malunion. Therefore, he opined that she would need to undergo additional procedures to get this fully fused, resulting in significant disability using the left arm. Even when fully fused, he indicated she would have limited use of the wrist secondary to the fusion.

In early June 2021, Dr. Norton performed fusion revision surgery and removal of the existing hardware. (ECF No. 9-2, pp. 13-17). Plaintiff followed up two weeks later. (ECF No. 9-2, pp. 10-12). Overall, she had good alignment with a slight radial deviation of the wrist. She was doing well and would progress to a removable cast, but she was to continue not using her left hand for at least another four weeks.

Contrary to the Appeals Council's finding, these additional records do relate back to the Plaintiff's condition during the relevant period and make clear that her wrist continues to be a problem that will likely require additional treatment in the future. We do not find substantial evidence to show that she experienced medical improvement as of June 5, 2020, and remand is recommended for further consideration of the Plaintiff's ongoing wrist impairment. On remand, the ALJ should obtain an updated RFC assessment from Dr. Norton. If Dr. Norton is unable or unwilling to provide said assessment, the ALJ should order a consultative orthopedic exam of the Plaintiff. In so doing, all of Plaintiff's medical records should be provided to the examiner.

## IV.   Conclusion

Based on the foregoing, I recommend reversing and remanding this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

**The parties have fourteen (14) days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. We remind the parties that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 11th day of January 2023.

/s/ Mark E. Ford
HON. MARK E. FORD
CHIEF UNITED STATES MAGISTRATE JUDGE